UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 15-CR-00223 |
| | * | |
| VERSUS | * | JUDGE FOOTE |
| | * | |
| SHAWN D. DRIGGERS    (01) | * | MAGISTRATE JUDGE HORNSBY |

GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO SUPPRESS STATEMENTS (DOC. 25)

NOW INTO COURT comes the United States of America, through the undersigned Assistant United States Attorney for the Western District of Louisiana, who states in response to the defense's Motion To Suppress Statements, the following: The United States concedes that, based upon the motion submitted, a hearing on the Motion To Suppress is required. This response will be to address the factual disputes and legal issues that will be relevant to the hearing on the Motion To Suppress.

FACTS

On the date of the interview that is the subject of this motion to suppress, the defendant's Captain contacted the defendant and asked him to come to Troop G. The Captain told the defendant that there were some people who needed to talk to him. Upon the defendant's arrival at Troop G, the Captain drove the defendant to Barksdale Air Force Base, Office of Special Investigations (OSI) division. At no time

did the Captain tell the defendant that he had to answer questions of the OSI Special Agents or any other law enforcement officers. At no time did the Captain suggest that the investigation was being conducted by the Internal Affairs Division of the State Police. Because the investigation did not relate to misconduct which occurred while the defendant was acting in his official capacity, the Internal Affairs Division of the State Police was never contacted prior to the defendant's interview. Nor were they present, either at Troop G at the time the defendant arrived there, or at the OSI office during the interview.

Upon arriving at the OSI office, the defendant was placed in an interview room. He remained there less than one hour prior to the beginning of the interview while the OSI Special Agent and the Detective from the Louisiana State Police prepared to conduct the interview. Upon entering the interview room, both the OSI Agent and the Detective from Louisiana State Police introduced themselves to the defendant and told him with whom and in what capacity they were employed. At no time did either the detective or the special agent suggest that they were associated with the Office of Internal Affairs or that there was an internal affairs investigation being conducted. At no time did either the special agent or the detective suggest that the interview was connected to his employment.

Even though the defendant was not in custody, prior to the interview, the detective read the defendant his rights pursuant to *Miranda*. The defendant stated he understood those rights and agreed to answer questions. The defendant answered questions for several hours. At no time did he ask to stop the interview or state that

he wished to have an attorney present. At no time during the interview did the defendant evidence his desire to stop the interview. At the conclusion of the interview the defendant was driven back to the Louisiana State Police Troop G by his Captain.

## LAW AND ARGUMENT

The defense argues that in the face of a presumptively voluntary waiver of his rights pursuant to *Miranda*, his statement should be suppressed pursuant to the rule set forth in *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). In *Garrity*, the Supreme Court set forth the rule that where police officers being investigated were given the choice to either incriminate themselves or to forfeit their jobs, and officers chose to make confessions, confessions were not voluntary but were coerced.[1]

It is well settled that the fact that a police officer is the subject of a criminal investigation does not automatically implicate *Garrity* when the defendant is questioned by law enforcement. Before a police officer's testimony will be considered "coerced" within the meaning of *Garrity,* he must show that he subjectively believed that he would lose his job if he refused to answer questions and that his belief was objectively reasonable. *United States v. Vangates,* 287 F.3d 1315, 1322 (11th Cir. 2002).

---

[1] In contrast to the facts of the case at bar, before being questioned, each defendant in *Garrity* was warned (1) that anything he said might be used against him in any state criminal proceeding; (2) that he had the privilege to refuse to answer if the disclosure would tend to incriminate him; but (3) that if he refused to answer he would be subject to removal from office. *Id* at 494, 617.

In *United States v. Tsou*, 983 F.2d 1061 (5th Cir. 1993) the defendant, an FBI Special Agent was questioned about communication with a foreign national. Though it was not clear from the outset of the investigation whether the communication would necessarily lead to criminal charges, the defendant's superiors were aware that the communications would subject him to employment sanctions. It was also undisputed that if the defendant failed to cooperate he could be subject to some form of administrative discipline. In finding the defendant's statements were voluntary, the Fifth Circuit found: "Furthermore, notwithstanding the existence of the FBI policy regarding noncompliance with such an investigation, Diem not only did not threaten Tsou with that policy, but actually secured a written waiver from Tsou that his participation in the polygraph test was voluntary." *Id* 1065.

In the case at bar, like that in *Tsou* and *Vangates,* the defendant was never threatened with any employment related discipline if he chose not to answer questions. In fact, the opposite was true. While in *Tsou*, the FBI investigators in the case were the equivalent of "Internal Affairs Investigators," a fact that could increase the defendant's concern about employment-related sanctions for failure to cooperate in the investigation, in the case at bar, the defendant was never questioned by an Internal Affairs Officer or instructed that the failure to answer could implicate employment. Thus, even if the defense argues that subjectively he believed the failure to answer could implicate future employment, that belief was not reasonable.

WHEREFORE the United States prays that at the conclusion of the hearing on the Motion To Suppress the Statement, the Court deny said motion.

        Respectfully submitted,

        STEPHANIE A. FINLEY
        United States Attorney

By: *s/ John Luke Walker*
     JOHN LUKE WALKER, ID # 18077
     ROBERT W. GILLESPIE, JR., ID # 06202
     Assistant United States Attorney
     800 Lafayette Street, Suite 2200
     Lafayette, LA 70501-6832
     Telephone: (337) 262-6618

## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## SHREVEPORT DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 15-CR-00223** |
| | * | |
| **VERSUS** | * | **JUDGE FOOTE** |
| | * | |
| **SHAWN D. DRIGGERS (01)** | * | **MAGISTRATE JUDGE HORNSBY** |

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of June, 2016, a copy of the foregoing Government's Response to Defendant's Motion to Suppress Statements (Doc. 25) was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Mr. H. Cameron Murray by operation of the Court Electronic Filing System.

*s/ John Luke Walker*
JOHN LUKE WALKER, ID # 18077
Assistant United States Attorney