UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

UNITED STATES OF AMERICA                    CRIMINAL NO. 15-cr-00223

VERSUS                                      JUDGE FOOTE

SHAWN D. DRIGGERS                           MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Defendant Shawn Driggers is charged with aggravated sexual abuse of a minor under the age of 12, aggravated sexual abuse of a minor between the ages of 12 and 16, and sexual abuse by threatening and placing a minor in fear.  Before the court is Defendant's **Motion to Suppress Statements (Doc. 25)**.  For the reasons that follow, it is recommended that Defendant's motion be **denied**.

**Facts**

The testimony at the evidentiary hearing, video of the interview in question, and exhibits introduced at the hearing established the following facts.  Defendant was a trooper with the Louisiana State Police, Troop G.  Defendant's spouse is a member of the United States Air Force and assigned to Barksdale Air Force Base in Bossier City, Louisiana.  Defendant, his spouse, and his stepchildren reside at Barksdale.  The charges in the indictment are based on sexual abuse that is alleged to have occurred on the base.

The initial complaint regarding Defendant's alleged sexual abuse was made to the Louisiana State Police.  However, because the allegations were based on conduct alleged to have occurred on base, the investigation became a joint OSI/Louisiana State Police investigation.  Tr. 30, 40. The interrogation in question occurred at the Office of Special Investigations ("OSI") at Barksdale.

Defendant lived only about two blocks from the OSI office, but OSI asked the Commander of Troop G (Defendant's employer) to require that Defendant be instructed to report to Troop G and then be transported to the OSI office.  The evidence showed it is common to use a subterfuge to require a person to leave his residence rather than going directly to him with a criminal investigation.  Tr. 77.  Investigators knew that Defendant was a state trooper and had a service weapon and perhaps other firearms in his residence.

Captain Thomas Madden, Commander of Troop G, contacted Defendant and directed him to report to Troop G.  Madden told Defendant that he had matters that he needed to discuss with him.  Defendant reported as directed, and met with Madden, Captain Bob Brown of the Louisiana State Police's Criminal Investigations Unit, and Lt. Shawn Joyner.

No one from the Internal Affairs Division of the Louisiana State Police was present, and at no time was Defendant told that he had to either answer questions or be fired.  Tr. 8. The discussions at Troop G were cordial and consisted mainly of introductions.  Defendant was not interrogated or  questioned about the allegations against him.

Defendant was driven by a fellow state trooper to the OSI office at Barksdale.  When they arrived, OSI investigator Jonathan Hicks met Defendant at the door.  Agent Hicks placed Defendant in an interview room and asked him to fill out an Air Force administrative data sheet, which requested his biographical data (name, address, age, social security number, etc.).  Tr. 72.  Defendant was left alone in the interview room for approximately one hour. Defendant was then interviewed by Agent Hicks and Detective Steve Beard, who was investigating the complaint for the Criminal Investigations Division of the Louisiana State Police.

The video shows that, before the interview began, Defendant was advised orally and in writing of his Miranda rights.  Defendant initialed and signed the advisement of rights and waiver forms, indicating that he waived his right to remain silent and to have an attorney present during questioning.  Defendant was then interviewed, and he generally denied the allegations against him.  At the end of the interview, Defendant voluntarily prepared a written statement (also denying the allegations) and wrote a letter  to his stepdaughter, the complaining victim.

During the interview, Defendant was treated with respect and was allowed water and bathroom breaks.  The detective also gave Defendant his jacket because Defendant, who was wearing only gym shorts and a t-shirt, appeared cold.  While the interrogation got heated at several points, there was no duress or coercion, and the evidence shows that Defendant

participated in the interrogation and answered the questions freely and voluntarily. Defendant was then allowed to leave the OSI office on his own.

**Law and Analysis**

Defendant's sole argument in connection with this Motion to Suppress is that the Commander and members of the Louisiana State Police led Defendant to believe that this was an internal affairs investigation, and that he was required to answer all questions or lose his job with the state police.  As shown below, there is no evidence (other than a naked assumption on  Defendant's part) to support this argument.

In Garrity v. New Jersey, 385 U.S. 493 (1967), the Supreme Court held that where police officers being investigated were given the choice to either incriminate themselves or to forfeit their jobs, and the officers then made confessions, the confessions were not voluntary but were coerced. See also Collins v. Bauer, 2013 WL 253881 (N.D. Tex.)(Garrity protects police officers from having to choose between cooperating with an internal investigation and making potentially incriminating statements.).  Garrity is not implicated every time a police officer is questioned by law enforcement.  Before a police officer's testimony is considered coerced within the meaning of Garrity, the officer must show that he subjectively believed that he would lose his job if he refused to answer questions and that his belief was objectively reasonable.  United States v. Vangates, 287 F.3d 1315, 1322 (11th Cir. 2002).

In support of the first prong, Defendant offers only his own testimony that he believed Captain Brown, who he had never met before the interview, was with the Internal Affairs Division of the Louisiana State Police.  Tr. 80-81.  Defendant had no explanation for why he thought that, and he readily admitted that no one told him that Captain Brown was with Internal Affairs.

But even if Defendant subjectively believed that he would lose his job if he did not answer questions at OSI, that belief was not objectively reasonable.  In considering this factor, courts consider the totality of the circumstances surrounding the testimony.  Vangates, supra at 1322.  Nothing was said or done either at Troop G or at OSI that would cause a reasonable person to believe that Defendant was required to answer questions or lose his job. The meeting at Troop G was cordial, and no one present told Defendant that he had to answer any questions that night.  Before being questioned at OSI, Defendant was told orally and in writing that he did not have to answer *any* questions and had the right to remain silent. Nothing in this record provides any support for Defendant's argument that he was coerced into making any statements.  Garrity is not implicated.

**Conclusion**

The evidence shows that Defendant was directed by his employer/Commander to appear at Troop G's office, where he was introduced to one or more other troopers.  He was then driven a few miles to the OSI office at Barksdale.  Once there, Defendant was told that he did not have to answer any questions, and Defendant waived his rights orally and in

writing.  The evidence shows that Defendant's statements were freely and voluntarily made and that no threats of any kind, including threats regarding his job, were used to coerce any statements from him.

Accordingly,

**IT IS RECOMMENDED** that the **Motion to Suppress (Doc. 25)** be **denied**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 45(b).  A party may respond to another party's objections within **fourteen (14) days** from the filing of the objections. Counsel are directed to furnish a paper courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 28th day of July, 2016.

_____
Mark L. Hornsby
U.S. Magistrate Judge